STATE OF OHIO EX REL. JAMES M. CAHOO .V. THE BOARD OF
ELECTIONS OF TOLEDO.

1. ACT OF MARCH 23, 1898, PROVIDING FOR THE REORGANIZATION OF BOARDS
OF EDUCATION APPLIES TO TOLEDO.

The act passed by the legislature, March 23, 1898, entitled, "An act to provide
for the reorganization of boards of education in districts of a city of the
third grade of the first class," applies to the city of Toledo, and the board of
elections of said city is justified in placing upon the ticket the names of the
candidates placed in nomination under this act.

2. TOLEDO IS A CITY OF THE THIRD GRADE, FIRST CLASS.

The city of Toledo is a municipal corporation of the third grade of the first
class.

HAYNES, J.

A petition is filed in this case for a mandamus to compel the board
of elections, defendants therein, to place upon the ticket or official bal-
lot to be voted at the election in April, 1898, the name of James M.
Cahoo as the candidate of the Republican party for member of the board
of education from the twelfth ward of the city of Toledo.    An alterna-
tive writ was issued upon that, returnable yesterday morning, and at
that time the defendants had filed an answer, in which they admit cer-
tain matters and deny others, the question raised being, whether a cer-
tain act passed by the general assembly of the state of Ohio, March 23,
1898, is a valid law binding upon the board of elections of the city of
Toledo?   The objection of the relator is, that by the terms of said act
the law is not applicable to the city of Toledo and is not binding upon
the board of elections of this county.   The act is entitled:   "An act to
provide for the reorganization of boards of education in districts of a
city of the third grade of the first class" and the first section provides:
"That all boards of education in city districts of the third grade of
the first class shall consist of five members, all of whom shall be elected
by the qualified electors for school purposes residing in such city, and
such board shall meet on the first and third Mondays of each month
during the school year, and it may hold such special meetings as it may
deem necessary."

In order to arrive at a better knowledge of the laws relating to school
districts and municipal corporations, I will briefly refer first to sec. 3885,
Rev. Stat., where it is provided:
"The state is hereby divided into school districts to be styled re-
spectively city districts of the first grade of the first class, city districts of
the second grade of the first class, city districts of the first class, city dis-
tricts of the second class, village districts, special districts and township
districts."

Section 3886, Rev. Stat., provided that:
"Each city having a population of ten thousand or more including
the territory attached to it for school purposes, and excluding the terri-
tory within its corporate limits detached for school purposes, shal consti

tute a school district, to be styled a city district of the first class; and each district that has heretofore been constituted a city district of the first class shall remain such.

Section 3887, Rev. Stat., provides as follows:

"Each city of the second class, having a population of less than ten thousand, by the last preceding census, including the territory attached to it for school purposes, and excluding the territory within its corporate limits detached for school purposes, shall constitute a school district, to be styled a city district of the second class."

And then provision is made for the other districts.

In regard to municipal corporations, sec. 1546, Rev. Stat., provides, in regard to classification, as follows:

"Municipal corporations are divided into cities, villages, and hamlets; cities are divided into two classes, first and second; cities of the first class are divided into three grades, first, second and third."

Section 1547, Rev. Stat., provided in regard to population, and, among other things:

"Those which on the first day of July last, had, and those which hereafter, on the first day of July in any year, have, according to an official report or abstract of the then next preceding federal census more than two hundred thousand inhabitants, shall constitute the first grade; those which on the first day of July last, had, and those which hereafter, on the first day of July, in any year, have when ascertained in the same way, more than ninety thousand and less than two hundred thousand inhabitants, shall constitute the second grade; and those which on the first day of July last, had, and those which hereafter on the first day of July in any year, have, when ascertained in the same way, more than thirty-one thousand five hundred and less than ninety thousad inhabitants shall constitute the third grade."

It is admitted here that the city of Toledo has a population of more than ten thousand, and has had for a long time, and it therefore comes within the classification of a *school district* to be styled a city district, and in fact has been so for many years. In regard to the grade of municipal corporation, it is now, and has been for many years, a *city of the third grade of the first class.*

It is practically admitted here (and if not admitted, it would be apparent) that this act when it provides for districts of the third grade of the first class does not refer to any other class which exists in the state of Ohio, and the question is, whether upon the whole act there is sufficient to show the intent of the legislature in regard to the city or territory to be covered by the act?

Before proceeding to a discussion of the act itself, it will be proper to read some of the rules which have been laid down by the Supreme Court of this state in regard to the construction which is to govern the court in examining the act. I read from the case of State ex rel. v. Archibald, Sheriff, 52 O. S., 1. The case arose under an act passed by the general assembly of the state May 21, 1894, to establish a court of insolvency in counties containing a city of the first grade of the first class. The error in that case was that the election of a judge was, by the second section, directed to be held on the first Tuesday after the *second Monday* of the year 1894, the general election in fact occurring on the first Tuesday after the *first* Monday. In regard to that the rules of the court say:

"If there is no error or mistake in this statute, it must be construed

and enforced according to its letter.   If there is such error or mistake, and the intention of the legislature can be ascertained, the error or mistake should be corrected by the court.

"That courts have power to correct errors and mistakes in statutes, cannot be doubted; but such errors and mistakes must be manifest beyond doubt, either on the face of the act, or when read in connection with other statutes in *pari materia*.

"When it thus appears beyond doubt that a statute, when read literally as printed, is impossible of execution, or will defeat the plain object of its enactment, or is senseless, or leads to absurd results or consequences, a court is authorized to regard such defects as the result of error or mistake, and to put such construction upon the statute as will correct the error or mistake, by carrying out the clear purpose and manifest intention of the legislature.   The error or mistake as well as the proper correction, must appear beyond doubt from the face of the act, or when read in connection with other acts in *pari materia*.

The Supreme Court of Pennsylvania states the rule in these words: "The power is undoubted, but it can only be exercised when the error is so manifest, upon an inspection of the act, as to preclude all manner of doubt, and when the correction will relieve the sense of the statute from actual absurdity, and carry out the clear purpose of the legislature."

An eminent text writer states the rules thus: 'The power to make such corrections is well established, but it is exercised only when the error is so manifest as to leave no doubt in the judicial mind as to the actual intent of the legislature."

Then follows cases to the same effect cited in the report. Other cases are cited in Ohio which practically lay down the same rule, but this last decision of the Supreme Court is sufficient for our purpose on this occasion.   I have said that the city of Toledo was included, or is a city district of the first class.   There are many districts of that class comprising a very large number of cities in the state of Ohio.   I have said that it is a municipal corporation of the third grade of the first class.   I believe it is the only one of that class in the state of Ohio, at this time or that has been in the state of Ohio at any time.   It will be observed that the act as it was passed provided, that, "in city districts of the third grade of the first class," not of cities of the third grade first class or districts in cities of the third grade first class, but "city districts of the third grade of the first class."   Standing alone, that description would not be applicable to any school dristrict of the state of Ohio, and we must look to the whole bill for the purpose of ascertaining whether there is sufficient in it to enable us to apply it to any school district in the state of Ohio.   It has already been pointed out that in this first section after providing that in city districts of the third grade of the first class there should be five members, it provides:   "All of whom shall be elected by the qualified electors for school purposes residing in such city."   No city having been referred to before that time, it is manifest, we think, that there had been at some time or was in the mind of the persons who drew this bill a reference to some city; and in the second section of the act it provides that "the board of elections shall publish the names of such candidates in the daily papers of the city"—not the city district, but "of the city," referring evidently to some city.

In section four it provides:

"Such board shall also have the powers specified in sec. 39941 relative,

to refunding bonded indebtedness, and it shall have all the powers and perform all the duties which by existing laws are vested in and to be exercised by boards of education in cities of the third grade of the first class relative to any library board and university board therein or otherwise.''

In sec. 10 it provides that:

''The city treasurer of such city, shall be *ex officio* the treasurer of the board of education in such district.''

In sec. 15 it provides, that:

''The members of the board of education, in cities of the third grade of the first class, in office when this act takes effect, shall continue in office until the school board is organized as herein provided, at which time their powers and duties shall cease and determine, and their offices thenceforth shall be and are hereby abolished.''

Twice at least it refers to boards of education of cities of the third grade of the first class: in sec. 4 and in sec. 15. That, of course, does not describe technically a city board of education of the first class, and the question is, to whom and to what does it refer?

We had a question before us two years ago, involving a statute which was passed with reference to the subject of taxation, which was decided at the September Term, 1896, but was never reported. In that case mandamus was brought to compel the auditor of this county to place upon the tax-duplicate a levy of seven mills on the dollar provided by the general statutes of the state of Ohio for contingent purposes of the school board. It will be remembered that funds used for the purpose of carrying forward the schools are raised: First, by a general tax levied by the state authorities; second, by the proceeds of certain school lands in the state; and then it is provided that, as a contingent fund, boards of education may themselves levy certain sums of money provided by the general statute, not to exceed seven mills on the dollar. This particular act in question was sec. 2690c, Rev. Stat., and provided:

''No tax shall be levied upon the property of any such city, by the council thereof, or any other authority therein, except by the boards of education in cities of the first grade of the first class, and in cities of the third grade of the first class, for school and educational purposes, until approved by the board of tax commissioners aforesaid. Provided that in cities of the third grade of the first class boards of education shall not levy in excess of five and one-half mills upon the dollar of the taxable property thereof in any one year.''

We held in that case that the act applied to the city of Toledo; and we held the act to be a valid act and rendered judgment accordingly. Aside from that decision, we think there is no question, but what in these places where it speaks in the act of boards of education in cities of the third grade of the first class, it refers to the board of education in the city of Toledo. In sec. 4, in the provision relating to the refunding of the bonded indebtedness, it says it shall have the powers specified in a certain section relating to that and says, ''It shall have all the powers and perform all the duties which by existing laws are vested in and to be exercised by boards of education in cities of the third grade of the first class relative to any library board and university board therein or otherwise.'' The city of Toledo has a library board, over which the board of education exercises some power—probably in appointing a trustee—and it has a university board, in relation to which the board of education also exercises some power, and we think there is no question but what that

State ex rel. Cahoo v. Board of Elections of Toledo.

clause refers to the board of education of the city of Toledo, as the law stands, and to none other.

But, in sec. 15 it provides that: "The members of the board of education, in cities of the third grade of the first class, in office when this act takes place shall continue in office until the school board is organized as herein provided, at which time their powers and duties shall cease and determine, and their offices thenceforth shall be and are hereby abolished." The court thinks there is no question but what that applies to the city of Toledo and to the board of education of the city of Toledo, and it clearly provides that the board shall cease and determine at a certain time—in a certain event—"their offices thenceforth shall be and are hereby abolished." That it was the intention of the legislature to abolish the board of education of the city of Toledo as it exists at the present time, this court thinks there can be no question; and the queston is whether the legislature intended to abolish the existing board without providing some other board in its place?

We think it clearly manifest, that the intention of the legislature was, first to provide for a new board of education for the city of Toledo; and that upon the election taking place that the existing board of education should cease and determine. To hold to the construction claimed on behalf of the relator, would be to hold that the legislature in passing this act had passed an act which was of no force whatever, applying to no territorial district in the state of Ohio and no school distrct, and that it was a mere nullity. This certainly was not the intention of the legislature; it intended to create a school board. That is manifest from a reading of the statute. We think the clear conclusion is that this act should be read substantially as if it provided for the reorganization of boards of education in city districts of a city of the third grade of the first class, and that that construction would make it an act which would be uniform and about which, so far as the classification is concerned, and the board of election is concerned, there would be no question whatever.

We are therefore clearly of the opinion that this act should be read in that manner and that it is of binding force upon the city of Toledo; that the board of elections is justified in its action in placing upon the ticket the names of the candidates placed in nomination under this act.

There were some other questions referred to in regard to this act, but we do not pass upon them: we pass simply upon the question before us in this proceeding. We hold therefore that the petition of the relator should be dismissed, at his costs.

*C. F. Watts* and *H. A. Merrill*, for relator.

*George B. Boone* and *Smith & Beckwith*, for defendants.